IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| vs. | No.1:20-CR-00041-TH |
| SANTOS ORELLANA-HERNANDEZ (1) | |

### REPORT AND RECOMMENDATION

Pending is the Defendant, Santos Orellana-Hernandez's ("Santos"), *Motion to Suppress Statement*. (Doc. No. 47.) United States District Judge Thad Heartfield referred the motion to the undersigned for proposed findings of fact and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. No. 48.) The undersigned held an evidentiary hearing on April 27, 2021. Santos seeks to suppress statements he made to law enforcement because he was questioned after he invoked his right to counsel. The Government argues that Santos did not unambiguously invoke his right to counsel and voluntarily continued the interview after signing a consent form indicating he was willing to answer questions without a lawyer present. After due consideration of the evidence, the undersigned recommends granting the motion.

### I. Evidence and Testimony

On May 5, 2020, agents with the Federal Bureau of Investigation filed a complaint and obtained an arrest warrant for Santos. The complaint charges Santos with a violation of 18 U.S.C. § 1958 (Use of Interstate Commerce Facilities in the Commission of Murder-for-Hire). (Doc. No. 1.) Santos was arrested on May 6, 2020, and transported to the FBI office in Beaumont, Texas for questioning. Santos is a Honduran national who speaks Spanish. The

interview was conducted by two FBI agents, Agents Moss and Smith, and Detectives Meza and Arviso, two Port Arthur police detectives who helped the FBI agents communicate with Santos in Spanish.

The following exhibits admitted at the hearing provide the framework for the instant motion:

    Exhibit 1A -   Consent to Search Form (Spanish)
    Exhibit 1B -   Consent to Search Form (English)
    Exhibit 2A -   Waiver of Rights Form (Spanish)
    Exhibit 2B -   Waiver of Rights Form (English)
    Exhibit 3A -   Video Recording of interview
    Exhibit 3B -   Transcript of interview (translated into English)
    Exhibit 4 -    Audio recording of interview

Using Detective Meza as an interpreter, Agent Moss focused his questioning on phone calls Santos made to an individual in Honduras. However, ten minutes into the interview, Agent Moss realized he had forgotten to read Santos his *Miranda* warnings.[1] Agent Moss then presented Santos with a Waiver of Rights Form in Spanish and English that contained the *Miranda* warning.[2] (Doc. No. 56-4, hereinafter "Waiver.")

Agent Moss presented the Waiver to Santos, who read the form aloud in Spanish. The form explains

> You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during the questioning. If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish. If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

---

[1] Under *Miranda v. Arizona*, 384 U.S. 436 (1966), a statement made by a person in custody is inadmissible unless that person was informed that he has the right to have an attorney present during questioning, that he has the right to remain silent, and that anything that he says may be used against him. The Government concedes that the Defendant's responses to any questions posed prior to Agent Moss's presentation of his *Miranda* rights should be suppressed.

[2] During the interrogation, Agent Moss tells Santos in English, "I just want to apologize. We made a mistake here. We needed to read [the Waiver] to you first and actually have you read it." (Doc. No. 56-5, p. 11.) But the interpreter did not relay that full statement to Santos.

2

CONSENT

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

(Gov. Ex. 2B.) After Santos read the form to Agent Moss, the following exchange ensued:

| | |
|---|---|
| Santos: | Okay, I want to have a lawyer. Can I?[3] |
| Detective Meza: | (in Spanish) Excuse me? |
| Santos: | Can I have a lawyer? |
| Detective Meza: | (in Spanish) Can you have a lawyer? |
| Detective Arviso: | If you want to. |
| Detective Meza: | (in Spanish) If you want to have a lawyer. |
| Santos: | I do because I'm being accused of stuff I haven't done. |
| Detective Arviso: | But . . . okay, but . . . |
| Agent Moss: | What is he asking? |
| Detective Arviso: | (in English) He wants to know if he can a – can he get an attorney? And he goes, "Okay, because you're accusing me of something I haven't done," so my . . . what I want to respond with is, I don't think we've made an accusation yet. |
| Agent Moss: | No, so, uh yeah, you can tell him, so, we're- we're- you can choose to not tell us- um- you can choose to speak with us, you can choose to stop speaking with us at any time . . . |
| Detective Meza: | (in Spanish) You can speak with us, you can stop the questioning whenever you want to, you can do whatever you want, whenever you want. They're not going to force you to do anything you don't want to do. |
| Santos: | No, no, no. I don't want to do time here. What's going on? I mean, how long will I be in prison for something I didn't do? |

---

[3] Santos speaks exclusively in Spanish.

3

| | |
|---|---|
| Detective Meza: | (in Spanish)  They want to talk about the incident, but they want to know if they can keep going with the . . . |
| Santos: | They can continue. |
| Agent Moss: | What did he say? |
| Detective Meza: | (in English) I- I told him that you- you wanted to speak about the incident and wanted to get his permission to continue, and he said, "Continue." |
| Agent Moss: | Okay, so, and just to make it clear, you can stop at any time, you can ask for an attorney at any time. |
| Detective Meza: | (in Spanish) He wants you to sign that and he wants to tell you again that you can stop the questioning at any time, they're not going to force you to do anything you don't want to do, and you can get a lawyer whenever you want. |
| Santos: | I need a lawyer because I need him because I don't want to go to jail for something that they're accusing me of. Maybe my wife is accusing me because she's with her husband, of things that aren't true. |
| Agent Moss: | What is he saying? |
| Detective Meza: | (in English) He says he- he want- needs a lawyer because he doesn't want to be in jail. |

(Doc. No. 56-5, p. 12-14.)  At the hearing, the Government published seventeen minutes of the interrogation video to demonstrate the context of this exchange.  Agent Moss testified that he understood Santos's question—"Can I have a lawyer?"—to be a *clarification* of his right to counsel, not a *request* for counsel.  Agent Moss testified that Santos never said he wanted to stop the interview.  Detective Meza testified that he understood Santos was confused about his right to counsel, but continued the interview nevertheless and signed the Waiver.  (Doc. No. 56-4.) The video shows that Detective Meza presented the Waiver to Santos, told him that Agent Moss wants him to sign it, while explaining "you can get a lawyer whenever you want."  Santos signed

4

the Waiver while Detective Meza translated his statement to the officers, "He says he- he want- needs a lawyer."

## II. Legal Standard

In *Miranda v. Arizona*, the Supreme Court "established that the prosecution may not use statements stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *United States v. Bennett*, 626 F.2d 1309, 1311 (5th Cir. 1980) (citing *Miranda*, 384 U.S. at 444). "The safeguards of *Miranda* . . . are well-established," *United States v. Payne*, 954 F.2d 199, 201 (4th Cir. 1992), and include "the now famous *Miranda* rights." *Bennett*, 626 F.2d at 1311.

Pursuant to *Miranda*, "[i]n order to use an in-custody statement against a defendant, the government must demonstrate that the defendant was warned of his right to remain silent and his right to consult with an attorney." *United States v. Anderson*, 755 F.3d 782, 790 (5th Cir. 2014) (citing *Miranda*, 384 U.S. at 471). When the accused "has invoked his right to have counsel present during custodial interrogation," he is "not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981); *see also Maryland v. Shatzer*, 559 U.S. 98, 103-04 (2010) (when a suspect asserts his right to counsel, the police must end all questioning until an attorney is available or the suspect reinitiates the interrogation).

In order to invoke the right to counsel during a custodial interrogation, the accused must make a statement that can "reasonably be construed to be an expression of a desire for the assistance of an attorney." *McNeil v. Wisconsin*, 501 U.S. 171, 178 (1991). The invocation of the right to counsel cannot be "ambiguous or equivocal." *Davis v. United States*, 512 U.S. 452, 459

(1994); *see also Soffar v. Cockrell*, 300 F.3d 588, 595 (5th Cir. 2002) ("An unambiguous statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney is required under this stringent standard.") (internal quotations omitted). If "a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," law enforcement need not cease questioning. *Davis*, 512 U.S. at 459 (emphasis in original).

The accused may also waive effectuation of his *Miranda* rights "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444. "[T]he State need prove waiver only by a preponderance of the evidence." *Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *see also Miranda*, 384 U.S. at 475 ("[A] heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived . . . his right to retained or appointed counsel."). The court must consider the "'totality of the circumstances surrounding the interrogation'" in order to "properly conclude that the *Miranda* rights have been waived." *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

### III. Analysis

Santos argues for the suppression of his statements to law enforcement because the interrogation continued despite his request for counsel. The Government contends that Santos read the *Miranda* Waiver, signed it, and "there was nothing in his comments to connect his mention of a lawyer with any desire by him to have a lawyer present at that moment." (Doc. No. 54, p. 12.) Essentially, the Government contends that Santos's alleged invocation of his right to counsel was lost in translation.

While there might have been confusion in the interrogation room among the officers who were questioning him (two who spoke Spanish and two who did not), the transcript speaks for itself. Approximately eleven minutes into the interrogation, Santos is informed of his right to counsel when Agent Moss presents the Waiver, which Santos reads out loud. Immediately after reading the form, Santos asked, "Okay, I want to have a lawyer, can I?" Does Santos's statement—"I want to have a lawyer, can I?"—qualify as an unambiguous request for counsel? The Government contends that Santos was confused about whether he was entitled to an attorney at that point, and that it was therefore a procedural clarification and not a request. In support, the Government relies on the Supreme Court's decision in *Davis*, which held that the defendant's remark, "Maybe I should talk to a lawyer," was not an invocation of the right to an attorney and did not require police to stop the interrogation. 512 U.S. at 455. The Government is correct that words like "maybe," "might," "think," and "perhaps," are markers that a suspect has not made the final decision to ask for an attorney. *See Soffar,* 300 F.3d at 595 (suspect did not unequivocally invoke his right to counsel during interrogation by asking officer whether he should get attorney, how he could get one, and how long it would take to have attorney appointed; such procedural statements were too ambiguous to constitute assertion of right, and thus did not preclude admission of incriminating statements made afterward); *United States v. Posada-Rios*, 158 F.3d 832, 867 (5th Cir. 1998) (holding that a suspect's statement that she "might have to get a lawyer then, huh?" was not a clear request). *But see Wood v. Ercole*, 644 F.3d 83, 91 (2d Cir. 2011) ("I think I should get a lawyer" found to be an unequivocal, unambiguous request for an attorney).

However, the Government's claim is not persuasive. Santos had just finished reading aloud the Waiver, the last sentence of which is ". . . I'm willing to answer the questions at this

7

time without a lawyer present." After reading that statement, he looked up from the Waiver and asked, "I want to have a lawyer, can I?"

After reviewing the videotape and transcript of the interrogation, it appears that Santos was asserting the precise right he was just informed he had—to have a lawyer present during questioning. He made the request in a definitive statement that in no way suggests he was confused about the availability or procedural aspect of retaining counsel. The undersigned finds that Santos's request, posed immediately after learning that he is entitled to counsel before further questioning, constitutes a valid invocation of his right to counsel and the interrogation should have ceased at that point. *Edwards* at 484-85.

However, assuming *arguendo* that Detective Meza had a reasonable belief that Santos was asking about the availability of a lawyer and not making a request for one, Santos's subsequent comments will be analyzed to determine whether they constitute a valid waiver of his right to counsel. Detective Meza clarified with Santos, "Can you have a lawyer?" and Detective Arviso remarked, "If you want to have a lawyer." Santos responded, "I do because I'm being accused of stuff I haven't done." At this point, Santos is clear that he wanted a lawyer and any perceived confusion regarding the availability of a lawyer was already clarified by Detective Meza that yes, procedurally Santos was entitled to a lawyer. *See e.g., United States v. Davis*, No. GJH-17-493, 2018 WL 4282634, at *5 (D. Md. Sept. 7, 2018) (holding that defendant invoked his right to counsel when, after reading waiver form, Defendant immediately responds, "If I'm going to answer questions, I'm going to need a lawyer here.")

The undersigned finds Santos's response, "I do [want a lawyer]," is the second clear indication that he invoked his right to counsel, and the interrogation should have ceased. Instead, Detective Arviso and Agent Moss discussed what they think Santos is trying to clarify and

Detective Meza informed Santos that he can stop the questioning at any time. At this point in the interrogation, Santos has asked for a lawyer twice and the agents responded that he can stop answering questions at any time. But the interrogation continued. Agent Moss informed Santos, in English, that he can ask for an attorney at any time. Detective Meza translated the instruction, "He wants you to sign [the Waiver] and he wants to tell you again that you can stop the questioning at any time, they're not going to force you to do anything you don't want to do, and you can get a lawyer whenever you want." Santos, for the third time, invoked his right to counsel: "I need a lawyer because I need him because I don't want to go to jail . . ." Detective Meza translated the response for Agent Moss, "He says he- he wants – needs a lawyer," as Santos signed the Waiver. Again, the interrogation should have stopped.

Detective Meza testified that Santos seemed confused but willing to continue the interrogation. However, the undersigned finds that the Defendant's invocation of his right to an attorney was clear. If Agent Moss or any of the officers present were confused about Santos's intentions, they could have clarified whether Santos wanted a lawyer.[4] But, as the Fifth Circuit has declared, a suspect need not "'speak with the discrimination of an Oxford don,' he must nevertheless clearly articulate his desire to have an attorney present." *Soffar,* 300 F.3d at 595 (quoting *Davis*, 512 U.S. at 459). Santos asked if he could have a lawyer, responded positively when asked if he wanted a lawyer ("I do"), and stated that he "needs" a lawyer, which Detective Meza translated as "He says he – he want – needs a lawyer . . ." to the officers in the room. Despite these assertions, the interrogation continued. Although Santos signed the Waiver, he was instructed to do so by Detective Meza who simultaneously informed the other officers that Santos said "he want- needs a lawyer."

---

[4] However, *Miranda* does not require law enforcement to ask clarifying questions. *See Davis*, 512 U.S. at 461 ("[We] decline to adopt a rule requiring officers to ask clarifying questions.").

9

The assertion of the right to counsel is a "significant event." *Edwards*, 451 U.S. at 485. The invocation of the right to an attorney is not an invitation to negotiate a waiver. *See Davis*, 512 U.S. at 452. Rather, the invocation of the right must be "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975). "If the suspect invokes that right at any time, the police must immediately cease questioning him until an attorney is present." *Davis*, 512 U.S. at 452. Suspects who invoke the right to counsel are "not subject to further interrogation by the authorities until counsel has been made available . . . unless the accused . . . initiates further communication, exchanges, or conversations with the police." *Edwards*, 451 U.S. at 484-85. This rule is designed to prevent "officers from badgering a suspect into waiving his previously asserted *Miranda* rights." *Davis*, 512 U.S. at 452. *See also United States v. Johnson*, 400 F.3d 187, 193-94 (4th Cir. 2005) (quoting *Smith v. Illinois*, 469 U.S. 91, 98 (1984)) ("The purpose of the rule formulated in *Edwards* is to prevent police 'badgering or overreaching—explicit or subtle, deliberate or unintentional.'"). Post-invocation responses to police-initiated interrogation do not constitute a valid waiver of the right. *Edwards*, 451 U.S. at 484.

Santos clearly asked for an attorney no fewer than three times, to which law enforcement responded with efforts to pressure him into waiving the right or ignored his request altogether. After his three requests, the Waiver is presented to him with an instruction to sign it, which he does. The undersigned finds that Santos unambiguously and unequivocally invoked his right to an attorney, that law enforcement officers impermissibly continued to interrogate him, and that his subsequently signed Waiver is consequently invalid. The interrogation should have stopped after Santos's first (or second, or third) request for counsel, and therefore, the undersigned recommends granting the Defendant's Motion to Suppress.

### IV. Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C), each party to this action has the right to file objections to this Report and Recommendation. Objections to this Report must (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, (3) be served and filed within fourteen (14) days after being served with a copy of this Report, and (4) be no more than eight (8) pages in length. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(2); E.D. TEX. CRIM. R. CR-59(b). A party who objects to this Report is entitled to a *de novo* determination by the United States District Judge of those proposed findings and recommendations to which a specific objection is timely made. 28 U.S.C. § 636(b)(1)(C); FED. R. CRIM. P. 59(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States District Judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of any such findings of fact and conclusions of law accepted by the United States District Judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 12th day of May, 2021.

_____
Zack Hawthorn
United States Magistrate Judge